Please do correct me. Everyone should have their name pronounced correctly. I'll stick to Kalu, Your Honor. Mr. Kalu. And I first want to say it's good that you're here today. I understand that the weather is quite inclement. And thank you, counsel, for braving the storm. May it please the Court. Mr. Kalu is appealing the application of enhancement at his sentencing. The enhancement was applied, quote, because the offense involved the means of an identification to produce another means of identification. And that's at Sentencing Guidelines 2B1.1B11Ci. Mr. Kalu argues that the application of that enhancement was not appropriate because he did not use a means of identification to produce or obtain yet another means of identification. The basis for the enhancement, according to the PSR in Mr. Kalu's case, was that his use of individuals' Medicare numbers resulted in a unique, quote, unquote, unique Medicare claim number being created in-house at the Medicare system. But have we ever held that intent is required for the use of IDs to make other IDs enhancement? I don't believe you have, Your Honor. And I'm not – perhaps I wasn't clear in my brief. I'm not arguing about the intent issue. I'm arguing that he didn't produce and he didn't obtain the secondary means of identification, which is the Medicare claim number. Medicare – I'm sorry, Judge. I was going to say, have we – I didn't want to interrupt your answer to Judge Elrod. My question, along a similar line, is have we specifically identified – identified the word identification, sounds kind of funny, but have we defined identification in a way that would help your argument that this wasn't truly a pirating of someone else's identity? I'm not aware of the Court having specifically defined an identification, such as a driver's license or a passport. Yeah. I mean, to be more specific, identity could be a number that's assigned or it could be a photograph or a digital system or swipe card or something of that sort. So there's a bunch of things that we could today, under today's technology, be considered an identifying product. Correct, Your Honor. And I would focus – I would focus the Court's attention on the background section of U.S. Sentencing Guideline 2B1.1, where it talks about this subsection focuses principally on an aggravated form of identity theft known as affirmative identity theft or breeding in which a defendant uses another individual's name, social security number, or some other form of identification to breed, i.e., produce or obtain new or additional forms. So Mr. Kalu did not produce this number. I don't think there's any dispute about that. It was Medicare created the number, and he didn't obtain the number. Again, Medicare used that in-house to pay the claim. He pleaded guilty to the health care fraud offenses, so I'm not arguing his culpability. I'm strictly arguing about the application of this enhancement. But you're not arguing that this isn't a means of identification under the statute, which is extraordinarily broad and includes any unique electronic identification number address or even a routing code could be an identification number, means of identification. That's not my principal argument, Judge. I think there is an argument that this is not a means of identification. You know, you certainly couldn't get through a TSA checkpoint at the airport with a Medicare claim number. It does not. It's not a unique electronic number or an address, an electronic address or routing code? How is that? It conceivably could be, but again, he did not produce that number. He did not obtain that number. So even if the court decides that this is a means of identification under the statute. Well, haven't you, though, you said he didn't try to travel with it. I don't think that's the test. I mean, we've had a bank account number be good enough. Correct. You can't travel with the bank account number. Correct. I was perhaps being a little too flippant, Judge. I agree that there are other means of identifications that could qualify, but nonetheless, Mr. Kalu was required to have produced it or obtained it, and he did neither in this case. I would also point out in line with your comments, Judge Elrod, that every time a victim calls a police department to report a loss of identity documents, an offense report is created that has a unique number on it. So in that case, this enhancement would apply to every single individual charged under this statute, which I don't think is the intent of the commission. Moreover, obviously further down the road when the case is filed against a defendant, that, again, is a unique number. A cause number and the defendant's number in the indictment is yet another potential means of identification under the statute. And so, again, every case that is brought before a district court, a Federal district court, charging this offense is going to have that case number, and therefore the enhancement would apply as well. So I would also point the Court to one of the application notes that I think bolsters Mr. Kalu's argument. In its application note C of subsection B11Ci that talks about how a defendant who uses a credit card from a stolen wallet to make a purchase does not qualify because that defendant has not used the credit card to obtain another means of identification. Yet that credit card transaction is going to have a unique transaction identifier. And so there seems to be some contradiction. If the government's position is applied, the credit card creates that same unique number in that transaction as the false Medicare claim created in-house in the Medicare system. And so if it doesn't, if the enhancement doesn't apply, if Mr. Kalu had used a credit card to try to obtain something of value because of the in-house number applied in the credit card company, I would argue, I do argue that it should not apply for the creation of a claim number in-house in the health care insurance industry. I really just have a hard time distinguishing Suchkowolski. I'm sorry, I couldn't hear you. The Suchkowolski case, or however you pronounce that, the use of a victim's Social Security number to open a bank account was in the enhancement. It seems like they're using someone's number to get money. Why isn't that a real problem for your client? I would argue that the creation of a bank account is something the defendant obtained. The defendant went and used the fake person's identification to open the bank account and thus had use of the bank account. I think that's different than a Medicare claim number where Mr. Kalu and his cohorts had no idea what the number was, were not interested in the number, just wanted the money that was going to be paid from the number. So the bank account is something of value, a means of identification, that the defendant specifically intended to create in the case you reference. I won't try to be too specific. But you had to have the number to get the money back from the government, probably. And you can get a lot of money back from Medicare claim numbers. Correct, Your Honor. You can. But the claim — I'm not talking about the Medicare beneficiary's identification number. I'm talking about the claim number assigned to a particular submission for a supposed procedure that obviously wasn't performed in this case. That number, Mr. Kalu and his cohorts were not aware of the creation of that number. They weren't interested in that number. I don't even think they received that number. Let's assume for the sake of argument that it was foreseeable that when he submitted whatever documentation or information he had using the real name of the patient, it was certainly foreseeable that a number was going to be assigned. Are we talking about the number of the specific claim which is paid and then not reused? Or is it a number assigned to the patient, and every claim thereafter that's submitted will be under that number? It's under — it's a specific claim number. So if the person — if Mr. Kalu submitted a phony claim for a broken arm, it would be a claim number. And that's the difference you're arguing between that, this case, and the Suchewalski — that's my attempt at it — Suchewalski case? Correct, Your Honor. That — that the bank account — in that case, the defendant had a direct hand in creating that bank account. He took specific — I'm assuming you'd say he took specific actions to create that bank account. Mr. Kalu and the other defendants who perform or engage in health care fraud, their activity is limited to submitting the claim, waiting for the check. One Medicare processing center could conceivably assign a number to it. Another one could assign a different number. Those are not things that he produced or he obtained. Those are things that did not — he did not use them in other criminal activity. The criminal activity at issue had already started and been completed, except for the payment of the check. So the bank account — the difference with the bank account is it can be used for a variety of different things, including listing it as an asset on other loan documents. A Medicare claim number for a specific false claim of a broken arm, for example, can't be used for anything other than that specific — payment of that specific claim. What about a mortgage loan number? A mortgage loan number? I — you know, my argument, Judge, is unless the defendant produced or obtained that number, the enhancement should not apply. Okay, well, we — Cooks says a mortgage loan number, which has some of the same characteristics. You said it can't be used for other things. It's not — you can't trade it on the open market. You can't do other things with it. That's uniquely tied to the mortgage loan. But a mortgage loan number conceivably could be used for other purposes. Again, listing that on a financial statement, showing that you have received credit from another financial institution, could bolster your ability to scam someone else. What about Gonzales? I'm sorry? Gonzales' case out of the Sixth Circuit, which appears to be directly on point. I agree. It's a difficult case for my argument. You want us to create a circuit split with the Sixth Circuit? With all due respect to your colleagues on the Sixth Circuit, I'm — clearly the judges of the Fifth Circuit are superior in their intellectual abilities. I think that was — I think the facts of that case are a little different, and I do think it was a mistake. Unless the — I'm just going by the plain language of the Guidelines Commission. And unless the defendant produced that secondary number, unless the defendant obtained that secondary number, the enhancement should not apply. Mr. Kalu did not produce that Medicare claim number, and he did not obtain that — or seek to obtain that Medicare claim number. And so I would argue that the Sixth Circuit decision is, I guess putting it diplomatically, not applicable here. But I do think that was incorrectly decided also. Thank you. And if there are no other questions, I'll be seated. We have your argument, and you've saved time for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Daniel Cain for the United States. Just a few points I'd like to focus on, but of course I'm happy to take any questions that the panel might have. First, the District Court did, as a global matter, properly apply the 2B1.1B11C1 enhancement. As Judge Elrod's question, I think, suggested, the statutory cross-reference in the 2B1.1B11C1, the means of identification guideline, is extraordinarily broad. It's true. It's quite a broad statute that the guideline refers to. That's 18 U.S.C. 1028 D7. As you know, that defines any name or number that can be used in conjunction — alone or in conjunction with any other information to produce — to identify a specific individual. What do you do with Mr. Adler's comment that he says then it would apply in every single — every time you have this statute, you would be applying this enhancement if we read it this broadly? Two responses, Your Honor. One, if that were the case, I don't think that would be — that would be a problem. 2B1.1 is quite a broad guideline. It covers not just health care fraud. It covers fraud globally. It covers larceny. It covers all sorts of property offenses. And it's not unusual for a particular provision of a broad guideline to apply across the board to particular offenses. Indeed, in, I believe, 2B3.1, the guideline applies in every instance of bank robbery because I believe there's a two — there's a two-level enhancement for an offense that involves a — an offense that involves a nationally chartered financial institution or something like that. So any crime that's prosecuted under the Federal Bank Robbery Statute would satisfy that guideline. So I don't think there's a double-counting problem. I don't think there's any sort of inherent problem with a guideline always applying in a particular instance of a crime. That said, I think there are guardrails here. If you look to the definition of means of identification in the guidelines, a means of identification — the guidelines exclude from the definition means of identification that are of the defendant himself, that are of fictitious people, or that are of individuals for whose conduct the defendant would be accountable under the relevant conduct guideline. So I don't think it would necessarily apply in every single health care fraud, but I do think it would apply in the mine run of health care fraud cases, and I don't think that's an inherent problem. Is there anything about the numbers involved in this case that are unique or correspond necessarily to the individual, the patient, or any other person? Or are they just numbers that are either sequentially or randomly assigned when a claim comes in for payment? Your Honor, it's the latter. The numbers themselves don't have any particular association with the beneficiary, but I don't think that makes a difference in this case because of the breadth of 18 U.S.C. 1028-D7. I want to make sure that I'm not certain I understand Mr. Adler's argument to exclude any argument about intent, but I also do want to address that intent point, because a couple times that argument, Mr. Adler did suggest that maybe it matters that Mr. Kalu had no intent or no purpose to create the secondary means of identification. There is no intent requirement in the text of the guideline, and this Court has repeatedly emphasized that where the Commission wants to create a mens rea requirement, it does so expressly. It didn't do so here, and I think the examples that we were, that the panel was discussing before, for instance, in Suchowalski, Suchowalski, I'm not sure, and in Cooks, those are good examples of cases where I think it's quite clear that the defendant had no particular purpose or interest in obtaining the secondary means of identification, the bank account number or the mortgage loan number. Would we create a circuit split if we were to rule the way opposing counsel wants, or are there other cases that we haven't yet talked about? No, Your Honor, it would create a split. I'm not aware of any other court of appeals to address this issue other than the Sixth Circuit. Of course, the Sixth Circuit's decision is non-presidential, which bears on the severity of the split. But, yes, this Court would come out a different way, specifically as to whether the Medicare claim numbers qualify as a means of identification, a secondary means of identification. We're bound in the Barson case, aren't we? That's correct, Your Honor. I think Barson does foreclose, as Mr. Colley conceded below and in this Court.  That's right, Your Honor. But there was a spirited dissent in that case. Do you think that this issue is appropriate or inappropriate for further consideration by the Court? I think the decision in Barson is a position that the government advocated in Barson. I think the Barson holding that Medicare beneficiaries can be victims is, I think, correct, as is apparent in this case. And if I may, I'd like to explain for just a moment why it makes sense that Medicare beneficiaries can be treated as victims in a scheme like this, where the way the CMS system works, I'm happy to go into detail on it, but the bottom line is that when a Medicare beneficiary is billed fraudulently or otherwise for treatments or services, that creates that claim and it creates a claim number that's specifically tied to that Medicare beneficiary. When that beneficiary later goes to another provider to seek a service or treatment that that beneficiary actually needs, that claim is going to bounce if the secondary treatment is incompatible with the original treatment that that beneficiary is being billed for. So, for example, in this case, this case involves home health services. If a beneficiary is fraudulently billed for home health services and then later tries to seek, say, outpatient physical therapy, that claim is going to bounce because to receive home health service, you have to be certified as homebound. So a defendant is not going to be able to receive outpatient physical therapy. That's precisely the kind of harm that I think this guideline was targeting. My colleague on the other side was discussing the background to this guideline, and it's true that, as Judge Englehart's question suggested, Congress and the Commission were concerned with the idea of pirating an identity, completely assuming an identity. That's not the only thing they were concerned with. If you look at the background, it says an additional harm that this guideline is concerned with targeting are the non-monetary harms associated with breeding offenses. Those are the kinds of harms that are created in this case, and that's why the government submits this actually is a sound application of this guideline. One final point, if I may, of course, happy to take any additional questions. Our colleague on the other side was discussing the fact that I think the heart of his argument before this panel now is that Mr. Kalu did not himself obtain the claim numbers. I don't think the text of the guideline requires that. The text of the guideline says the offense involved the use of a means of identification to obtain a secondary means of identification. That passive voice is, I think, purposeful. It doesn't require that the defendant himself obtain the means of identification. So unless the panel has any further questions, we're happy to rest on our brief. Thank you very much. Thank you, counsel. That squishing noise was my waterlogged colleague going back to the table. I'll be very brief. I don't dispute the government's argument about non-monetary means, use of this statute for non-monetary means. For example, a fake passport could be used to obtain a driver's license. There's no money involved in that, but I recognize the statute forbids and the enhancement would apply in that kind of application. Again, for Mr. Kalu, I am just arguing that in this particular case, the Medicare claim number doesn't qualify as the secondary means of identification and that he did not produce or obtain that number. I'm not asking the court to craft some sort of broad statement about what does constitute a secondary means of identification or what does not. I do think the court in this case is responsible for crafting or at least addressing the produce or obtain element of the enhancement because I don't agree with the government that there is a problem with an enhancement that applies in every single case. The bank robbery statute could conceivably be applied to an institution that's not federally insured, but in this case, simply because a defendant gets a cause number from the U.S. district clerk, this enhancement applies. It would be impossible for this case, for this enhancement to not apply. And then as far as Judge Elrod's comment about the number of victims in the Barson case, it was a very spirited defense by Judge Jones, and I would just remind the court that in every PSR, there's a section for listing the victims, and the PSRs in these kind of cases list Medicare as the victim only. They do not list any of the sometimes co-conspirators, uncharged co-conspirators who allowed their identification numbers to be used for Medicare claims falsely. But the Barson case does seem to require that those co-actors in the crime are actually victims. Why isn't the PSR recording them then? I'm confused about the PSR. Because if there's no other victims, then how can the enhancement be applied? I mean the victim. The PSR, and I will tell you that your colleagues on the district bench seem to be concerned about this in increasing numbers because the victim section says Medicare is the victim of the offense, but then the enhancement applies because they list all of the fake, all of the names of the individuals many times in the recent cases that I've had actually are knowledgeable of the crime. Do you know why the probation office does that? I do not. I do not. And has that been considered in any of our cases in that issue specifically? I know there are a number of judges in the Southern District of Texas that are rejecting that enhancement now. So they reject it because the only victim listed is Medicare, and Medicare cannot be the victim for that enhancement. Correct. Medicare is a single victim, and so that's why the district judges are. Not all of them, I concede, but some of them are saying, yeah, Medicare is the victim. It's only one, and we're not going to apply that enhancement. But you're not arguing that really here, are you? In my brief, I conceded the Barson case seems to have foreclosed the issue with the exception of Judge Jones' dissent, but I wanted to preserve it for Mr. Kalu in case it does go up. And this, I forgot this PSR. I think I have it here. But this PSR has Medicare only as the victim? I'll have to check. I can check. I can notify the court after the argument. Thank you. Anything else? No, Your Honor. Thank you.